[Cite as *In re J.P.*, 2025-Ohio-3293.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: J.P.

:
:    C.A. No. 30437
:
:    Trial Court Case No. C-2022-003534-
:    0N,0Q
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:
:    **FINAL JUDGMENT ENTRY &**
   **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on September 12, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and LEWIS, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30437

ROBERT ALAN BRENNER, Attorney for Appellant, Mother
SARAH H. CHANEY, Attorney for Appellee, Montgomery County Children Servies
GARY C. SCHAENGOLD, Attorney for Appellee, Father

TUCKER, J.

{¶ 1} Appellant ("Mother") appeals from the decision of the Montgomery County Court of Common Pleas, Juvenile Division, granting legal custody of her daughter J.P. to Appellee Father. For the reasons outlined below, we affirm.

## I. Factual and Procedural History

{¶ 2} Mother and Father are the biological parents of J.P., a minor born in January 2020. On August 19, 2022, the Montgomery County Department of Job and Family Services, Children Services Division ("MCCS") filed a complaint alleging that J.P. was a dependent child, as defined under R.C. 2151.04(B) and (C). The complaint alleged that Mother was using methamphetamine and leaving needles within reach of J.P. The complaint further alleged that Mother and the child did not have housing.

{¶ 3} J.P. was adjudicated dependent on November 7, 2022, and temporary custody was granted to the child's maternal grandmother. Mother was granted supervised visitation and Father was granted unsupervised visitation. In October of 2023, temporary custody of the child was transferred to MCCS. Both parents were granted visitation. MCCS created case plans for both parents.

{¶ 4} In early 2024, both parents filed motions seeking legal custody of the child. On July 23, 2024, MCCS filed a motion seeking the grant legal custody of J.P. to Father. In support of the motion, MCCS noted that Mother had a drug relapse in February of 2024 and

had failed to maintain stable employment. MCCS noted that Father had maintained stable housing and employment throughout the duration of the case. The Guardian Ad Litem ("GAL") filed a report in September of 2024. The GAL's report noted Mother's drug relapse. The report also noted that Mother had refused to agree to shared parenting. The GAL recommended that Father be awarded legal custody.

{¶ 5} The parties and their attorneys appeared before the assigned juvenile court magistrate on September 19, 2024, for a dispositional hearing on MCCS's motion regarding the legal custody of J.P. The magistrate and parties discussed a proposed parenting time schedule. The transcript of the hearing reveals that at the beginning of the hearing, Mother was confused regarding the parenting time she would have under the agreement. It appears she believed the agreement provided she would have a week with visitation followed by a week without. The magistrate clarified that Mother would have visitation every week. Mother's visitation was to take place from Friday afternoon until Monday morning every other week, and on the alternate week she would have visitation from Thursday after school until Friday evening.

{¶ 6} The magistrate explained that Mother would retain residual rights and what those rights included. Mother asked, "[t]hen why can't we do shared parenting?" The magistrate noted that such a plan had not been requested and was not properly before the court at that time. The magistrate and the parties further discussed parenting time after which Mother reiterated that she was frustrated and did not understand "why shared parenting's not on the table for me." The magistrate asked Mother whether she agreed to awarding legal custody to Father or whether the court needed to set a hearing on the matter. Mother responded, "I mean, I don't know. I mean, no, I'm not in agreement with him having legal custody." Mother stated, "I just want [J.P.] to have both of us[,]" and expressed concern

that Father, as legal custodian, would be able to deny her parenting time. The magistrate informed her that the parenting time schedule they discussed was the minimum amount of visitation Mother would be awarded. Mother did not voice any other objection after that.

{¶ 7} The magistrate proceeded to take testimony from the ongoing caseworker assigned to J.P. regarding the best interest of the child. Both Mother and Father were given the opportunity to conduct cross-examination. Following the conclusion of testimony, the magistrate stated that legal custody would be awarded to Father. The magistrate discussed child support with the parties and determined that a minimum support order was appropriate. The magistrate concluded by asking whether the parties had more to discuss. When both parties responded in the negative, the magistrate adjourned court.

{¶ 8} The magistrate issued a decision which stated that the parties had "knowingly, intelligently, and voluntarily entered into an . . . agreement in which legal custody would be granted to [Father]." The decision granted legal custody to Father upon a finding that doing so was in the best interest of the child. Mother filed objections in which she claimed she had not agreed to such a disposition. She further claimed that trial counsel was ineffective.

{¶ 9} The juvenile court overruled Mother's objections and adopted and affirmed the magistrate's decision.

{¶ 10} Mother's timely appeal followed.

## II.     Legal Custody

{¶ 11} Mother's assignment of error states:

THE JUVENILE COURT ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY TO FATHER BASED ON AN AGREEMENT OF THE PARTIES.

{¶ 12} Mother claims the record "does not support a finding that [she] voluntarily relinquished her rights to custody[.]" She contends the juvenile court erred by awarding legal custody to Father.[1]

{¶ 13} R.C. Chapter 2151 grants a juvenile court exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent. *In re A.D.*, 2023-Ohio-2442, ¶ 59 (3d Dist.). Once a child has been adjudicated dependent, R.C. 2151.353(A) provides the juvenile court with several dispositional alternatives for the child. Relevant to this case, R.C. 2151.353(A)(3) authorizes the juvenile court to award legal custody of a dependent child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child."

{¶ 14} "Legal custody" constitutes "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21). Legal custody is meant to be permanent in nature. R.C. 2151.42(B). However, it differs significantly from a termination of parental rights as the parent who loses legal custody of a child "retains residual parental rights, privileges and responsibilities." *In re C.R.*, 2006-Ohio-1191, ¶ 17. Such a parent is not permanently foreclosed from regaining custody. *Id.*

{¶ 15} From the record before us, it can be reasonably inferred that the parties, prior to appearing in court, had reached an agreement regarding legal custody and visitation. It was only after visitation was discussed on the record that Mother voiced disagreement with

---

[1] Mother's appeal does not address the ineffective assistance of counsel claim or the findings regarding the best interest of the child.

awarding legal custody to Father. Mother's sole issue at that time was her concern that she would not have adequate parenting time with the child. Once that concern was addressed, Mother indicated her understanding and her desire to end the litigation over the matter. Mother did not voice any other objections during the remainder of the hearing.

**{¶ 16}** Based upon this record, we cannot conclude that the trial court erred in concluding that Mother knowingly, intelligently, and voluntarily agreed to Father obtaining legal custody of the child. The trial court did not abuse its discretion in overruling Mother's objections and adopting and affirming the decision of the magistrate.

**{¶ 17}** Accordingly, Mother's assignment of error is overruled.

### III.  Conclusion

**{¶ 18}** Having overruled Mother's assignment of error, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J., and LEWIS, J., concur.